UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

PERCY L. DELANEY,

        Plaintiff,

    v.                                          Case No. 12-C-836

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

**DECISION AND ORDER**

      This is an action for review of the final decision of the Commissioner of Social Security denying Plaintiff Percy L. Delaney's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. 42 U.S.C. § 401 et seq. The ALJ found that Delaney was capable of performing past relevant work as an industrial cleaner or bakery machine operator and that he was therefore not disabled within the meaning of the Social Security Act. Delaney claims that the ALJ erred in assessing his credibility and that the ALJ's findings as to his past relevant work and his residual functional capacity (RFC) were not supported by substantial evidence. For the reasons stated in this opinion, the Commissioner's decision will be affirmed.

**BACKGROUND**

      Delaney applied for DIB on September 8, 2008, alleging disability beginning September 2, 2008. Delaney's application was initially denied on January 15, 2009, and following a denial of his request for reconsideration, a hearing before an administrative law judge (ALJ) was held on

September 16, 2010. Delaney was represented by counsel during the hearing. The hearing was to be held via video conference, but due to technical difficulties that developed at the beginning of the hearing, it was conducted almost entirely by telephone. Delaney's counsel waived any objections to conducting the hearing by telephone, stating that "[w]e have no problem going forward without video. Just telephonically." (Tr. 31.)

Delaney alleged disability due to his back pain, diabetes, neuropathy, shoulder pain, coughing, and shortness of breath. (Tr. 166, 194.) The ALJ found that Delaney suffered from the following severe impairments: degenerative disc disease, lumbar spine; mild degenerative changes of left acromioclavicular joint; and diabetes mellitus with mild diabetic neuropathy and moderate retinopathy. (Tr. 12.) The ALJ then concluded that Delaney did not have an impairment, either singly or in combination, that met a listing.

At the next step, the ALJ found that Delaney had a physical RFC to perform light work with the limitation to lifting 10 pounds frequently, 20 pounds occasionally; sitting and standing 6 hours of an 8 hour work day; and occasionally bending or stooping. With this RFC, the ALJ found that Delaney was capable of performing his past relevant work as an industrial cleaner as actually performed and bakery machine operator as defined in the Dictionary of Occupational Titles. Because Delaney could perform his past relevant work as a bakery machine operator as defined by the Dictionary of Occupational Titles and as a cleaner, industrial as actually performed, Delaney was found not to be disabled. (Tr. 15.) On June 22, 2012, the Appeals Council declined to review the ALJ's decision, making the ALJ's opinion the final decision of the Commissioner.

In the meantime, shortly after the ALJ issued his decision denying his claim, Delaney filed a new application for DIB and was found disabled as of November 17, 2010. In this action, Delaney

seeks review of earlier denial, claiming that he was disabled prior to that date and that the Commissioner's decision should be reversed.

## STANDARD OF REVIEW

An ALJ's conclusion of no disability is reviewed with deference and will be upheld if it is supported by substantial evidence. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The court reviews the entire record but does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). An ALJ need not specifically address every piece of evidence, but must provide a "logical bridge" between the evidence and her conclusions. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010) (citing *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008)). An ALJ must also "confront evidence that does not support his conclusion and explain why it was rejected." *Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2003). An ALJ's credibility determination is entitled to special deference because the ALJ has the opportunity to observe the claimant testifying. *Castile v. Astrue*, 617 F.3d 923, 928-29 (7th Cir. 2010). Accordingly, credibility determinations are reversed only if they are patently wrong. *Id.* The ALJ is also expected to follow the Agency's own rulings and regulations in making his determination. Failure to do so, unless the error is harmless, also requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736-37 (7th Cir. 2006).

**ANALYSIS**

**1. Credibility**

Delaney argues that the ALJ erred in his credibility assessment, disregarding Delaney's complaints of pain and the severity of his symptoms. First, Delaney recites the criticism of what the Seventh Circuit has characterized as "meaningless boilerplate." *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010). But the mere use of boilerplate does not require that an ALJ's decision be reversed; rather, it is when boilerplate is used as a substitute for analysis that reversal is required. *Carter v. Astrue*, 413 Fed.Appx. 899, 905-06 (7th Cir. 2011). Here, the ALJ included, along with the boilerplate language, an explanation for his credibility determination. The ALJ noted that the treatment records did not reflect pain of such frequency and severity that it would preclude light work. He noted that Delaney had reported to a consultative examiner that he walks two miles twice a day and that he is on his feet five hours a day. Upon physical examination, the consultative examiner found that Delaney had no problems walking, sitting, grasping or manipulating. And treatment notes from July 2010 confirmed that Delaney continued to walk two hours a day seven days a week. (Tr. 13.)

The ALJ also noted that the medical records did not show any significant limitations related to Delaney's diabetes, and while he had previously complained of blurred vision, vision testing had shown 10/30 visual acuity in the right eye and 20/50 in the left. The ALJ found it significant that Delaney had not had any surgery for his conditions and had received little therapy. He found such lack of treatment inconsistent with the medical response that would be expected if the limitations were as severe as Delaney described. And while Delaney complained of shoulder pain, the imaging studies showed only mild degenerative changes in the acromioclavicular joint. (Tr. 14.)

The ALJ also found it significant that Delaney had not stopped working in September 2008 because of his medical condition, but because his employer lost a cleaning contract and he was let go. As to opinion evidence, the ALJ noted that the record contained no opinions from treating or examining physicians indicating that Delaney was disabled or had limitations greater than the RFC he had found. In light of the opinions and statements of the health professionals, the ALJ gave little weight to the statements of his family and friends, especially considering the likelihood that they would be influenced by sympathy for Delaney or other emotional factors. (Tr. 14.)

Delaney argues this explanation is inadequate and complains that the ALJ failed to mention the objective testing that shows he suffers from degenerative disc disease which has gotten progressively worse. (ECF No. 10, at 17.) But the objective testing to which Delaney refers only tells us that he had degenerative disc disease, a fact the ALJ had already found on the basis of such evidence. It does not tell us whether he was actually experiencing the pain and limitations he claimed. This was why the ALJ was required to assess Delaney's credibility. All the objective testing proved was that he had a condition that could produce the symptoms he claimed; the ALJ was tasked with the job of deciding whether his claim that it did was believable.

Delaney next chastises the ALJ for not mentioning any of his testimony that was contrary to the medical records on which the ALJ relied. Delaney points out that at the hearing he testified that he constantly experiences swelling in his hands, burning in his feet and watery eyes. He also testified that he was only able to walk one half of a mile, and even with breaks, it took him fifteen to twenty minutes. He testified that he had problems standing for more than five to ten minutes and could not sit for a long period of time. Delaney complains that the ALJ's failed to explain why he rejected his testimony and argues there was no basis for him to simply accept the older evidence as true over the testimony given at the hearing. (ECF No. 10, at 17-18.)

But of course, the ALJ did consider Delaney's testimony; Delaney's testimony was the focus of his entire credibility analysis. In explaining why he rejected Delaney's testimony describing his severe and constant pain and limitations, the ALJ first focused on the consultative examination performed by Dr. Ward Jankus three months after Delaney filed his application for DIB. (Tr. 271-74.) Dr. Jankus reported that although Delaney stated that he had back problems for about the last ten years, he hadn't seen a doctor in two years. He had some testing done (he didn't know what) and recalls being told he had a "bad disk." (Tr. 271.) Delaney told Dr. Jankus that he had never been given an injection, never had surgery, but had received a little physical therapy which did not help much. He was not taking any prescriptions for his back pain but did take some Advil. (*Id.*)

At the time, Delaney said his back was "not much of an issue." (*Id.*) He had been off of work from his part-time housekeeping job because the company he worked for had lost a contract, and his back problems depended "a lot on his level of activity and things like heavier lifting or bending or leaning type of activities." (Tr. 271-72.) He did not complain of radiating pain, but he reported "somewhat of a burning globally in the feet, but that is on and off and not constant. Sometimes he will notice it mostly at night." (Tr. 271.)

Delaney also reported to Dr. Jankus that he tried to get out and walk about two miles twice a day. He thought he could stand about thirty minutes and sit about forty-five minutes before his back would stiffen up and he would be ready to take a break and change positions. In an eight-hour day, he thought he was on his feet about five hours altogether, and he thought that he lift about 40 pounds "pretty reasonably without injuring his back." (Tr. 271-72.) When Dr. Jankus asked him about his arm problems, Delaney said he would sometimes get some tingling or numbness in his left arm when he lies on his left side, and in his right when he lies on his right side. Overall,

however, he did not think it limited him in what he could do, and he could do all of his own self-care, including "bathing, dressing, feeding, hygiene, etc." (Tr. 272.)

On examination, Dr. Jankus noted that Delaney's back had normal alignment and "well-preserved" range of motion. Delaney could "actually forward flex 80 degrees touching his fingertips to the floor, extend 30 degrees, lateral side-bend 35 degrees bilaterally." (Tr. 272.) Dr. Jankus noted no tenderness to palpation and no spasm, and he again recounted Delaney's report that his back does not really bother him just taking it easy, it was when he was doing a lot of bending/lifting type activities that it would start to aggravate in the past." (*Id.*)

As to his lower extremities, Dr. Jankus noted that they seemed to be in good repair overall. There were no diabetic changes in his feet, no sores, and his hip, knee and ankle range were full. Neurologic examination revealed intact sensation, 5/5 strength in the lower extremities proximally and distally. Straight leg raising was negative at 80 degrees and in a sitting position bilaterally. (*Id.*) Examination of upper extremities likewise showed full range at shoulders, elbows, wrists and fingers, 5/5 strength, normal grip strength, and intact sensation. His gait pattern was smooth with no limp or asymmetry. He showed no weakness walking on tiptoes or heals. (Tr. 273.)

Based on his examination, Dr. Jankus listed three impressions: (1) Chronic activity-dependent localized mechanical lower back pain; (2) intermittent foot burning, possibly related to diabetes, although no prominent diabetic neuropathy on exam; and (3) intermittent arm numbness complaints of unclear etiology - no clear myelopathy/peripheral nerve entrapment/radiculopathy deficits on current upper extremity neurologic exam. (Tr. 273.) He also ordered X-rays which showed "moderate degree of degenerative changes at L5-S1 and L4-L5. (Tr. 274-75.)

Dr. Jankus' report of his examination constitutes substantial evidence that supports the ALJ's finding that Delaney's testimony was not credible. In addition, a report from the Fox Cities

Community Health Clinic, also referenced by the ALJ, indicated that as recently as July 2010, two months before the hearing, Delaney was able to able to do regular exercises and was still walking two hours a day, seven days a week. (Tr. 13, 545.) The same report notes Delaney had no visual complaints and his only musculoskeletal complaint was bilateral pain in shoulders and knees. (Tr. 546.) In light of this evidence, the ALJ was not required to accept Delaney's testimony that he was in severe back pain all the time (Tr. 33-34), constant pain in his left shoulder (Tr. 43), constant pain in his feet (Tr. 43-44), and that he can only walk a half mile (Tr. 46), stand five or ten minutes without pain (Tr. 47) and sit for long periods of time. (Tr. 47-48.) His testimony was inconsistent with what he had reported to health care professionals as recently as two months before the hearing. It was not unreasonable to place greater weight on what Delaney told the doctors who he wanted to treat him than on what he told the ALJ who was deciding his disability claim.

The ALJ also noted that the lack of treatment reflected in the medical record was also inconsistent the degree of pain and limitation Delaney claimed, and indeed it is. It was not unreasonable for the ALJ to expect an individual, with the pain and limitations Delaney alleged, to have at some point been offered more aggressive treatment than what is reflected in his treatment records. In fact, at the time he was seen by Dr. Jankus, only three months after he filed his application, Delaney reported he hadn't seen a doctor for back problems for two years. (Tr. 271.)

Delaney argues that his lack of insurance accounts for the absence of treatment and the ALJ erred in failing to take that fact into consideration. He notes that Social Security Ruling 96-7p warns ALJ's against drawing adverse inferences from a claimant's failure to seek or pursue regular medical treatment without first considering that "[t]he individual may be unable to afford treatment and may not have access to free or low-cost medical services." SSR 96-7p. But there is no evidence that Delaney did not have access to free or low-cost medical services. Although Delaney

testified he had no insurance after 2007, the evidence does not suggest that he ever sought medical care and was denied care because he did not have insurance. In fact, the record shows Delaney had multiple visits to Fox Valley Community Health, a free clinic, for examination, care and treatment of a variety of conditions. (Tr. 45.) He also testified that he had laser surgery on both eyes. (*Id.*) Even though Delaney had regularly seen doctors at the free clinic, his medical records do not contain any indication that any doctor thought that his condition or complaints warranted more aggressive treatment. It was not improper for the ALJ to consider this fact, as well.

Finally, the ALJ found it notable that, contrary to his testimony at the hearing, Delaney had not stopped working because of any medical condition or limitation. (Tr. 14, 32.) Instead, as he told Dr. Jankus, he stopped working because his employer lost a contract and he was let go. Here again, the ALJ is entitled to consider the inconsistency between Delaney's testimony and what he told Doctor Jankus in assessing his credibility. The reason he actually quit working is also a proper consideration in assessing the severity of his impairments.

In sum, the ALJ finding that Delaney's testimony concerning the intensity, persistence and limiting effects of his impairments was not credible was supported by substantial evidence. The ALJ cited evidence contained in the record that, though not conclusive (it never is), supports such a finding. It is true, as Delaney notes that he did not have the usual opportunity to observe the demeanor of the witness whose credibility he was evaluating because of the breakdown in technology. But Delaney, through counsel, waived all objection to proceeding despite that breakdown and, in any event, the assessment provided by the ALJ was not based on Delaney's demeanor. Instead, it was based on the inconsistencies between his testimony and the medical records. Indeed, even during the hearing, Delaney's answers varied depending on who was asking

him the question. There was substantial evidence, both in the record and recounted by the ALJ in his decision, that supports the finding that Delaney was not a credible witness.

**2. Physical RFC Assessment**

The ALJ found that Delaney had the RFC to perform light work. Delaney argues that there are significant flaws in the ALJ's decision undermining his RFC determination. He argues the ALJ missed multiple impairments discussed throughout the record that should have been considered severe. Delaney also contends that the ALJ failed to include all of the limitations from his various impairments in his hypothetical to the VE or in his RFC finding. Absent these errors, Delaney contends, his RFC might have been limited to sedentary work, which given his age, education and work experience, would have mandated a finding of disabled.

Delaney contends that, in addition to the severe impairments considered by the ALJ, he also had eye problems due to macular edema, cataracts, and frequent eye watering. The record also shows he suffers from sleep apnea and he is obese. Delaney maintains that the ALJ should have considered these aliments. Per Social Security Ruling 96-8p, an ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" The primary complaints that Delaney contends limited his ability to work stemmed from his back and shoulder pain. There is no evidence within the record that Delaney was limited by his eye problems, sleep apnea, or his weight. The ALJ noted that Delaney's diabetes did not impose any significant limitations, but nevertheless included as severe impairments diabetic neuropathy and diabetic retinopathy. (Tr. 13.) The ALJ explained in his RFC assessment that "the record does not contain any opinions from treating or examining physicians indicating that the claimant is disabled or even has limitations greater than those determined in this decision." (Tr. 14.) Delaney's contention that the ALJ should have included additional limitations is without merit because there is no evidence

in the record that Delaney's eye problems, sleep apnea, or obesity imposed any additional limitations that were not part of the ALJ's physical RFC assessment. And Delaney fails to point to any evidence that a remand to explicitly consider Delaney's other ailments would affect the outcome of the case. *See Skarbek v. Barhart*, 390 F.3d 500, 504 (7th Cir. 2004) (refusing to remand simply because ALJ failed to mention claimant's obesity where claimant did not "specify how his obesity further impaired his ability to work").

Indeed, there is additional evidence in the record, not cited by the ALJ, that supports an even higher RFC than the ALJ found. Dr. Mina Khorshidi, a state agency medical consultant, reviewed Delaney's medical records and concluded in a Physical Residual Capacity Assessment dated January 14, 2009, that he was capable of the full range of medium work. (Tr. 276-83.) A second state consulting physician performed a review of the record and confirmed Dr. Khorshidi's findings on June 15, 2009. (Tr. 301.) Though not specifically referenced by the ALJ, this evidence which appears in the record before the court also supports the ALJ's finding that Delaney had at least an RFC for light work.

### 3. Past Relevant Work

Delaney's primary argument is that the ALJ's finding that his past relevant work included light work is not supported by substantial evidence. According to the Social Security Medical Vocational Guidelines, a person who is 57 years old, limited to light work, and has no past relevant work that is light, or skills that are transferrable to light work, is disabled. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.02. Given his age and an RFC of light work, Delaney would be considered disabled unless he had past relevant work that would be considered light work, or had skills transferrable to such work.

"Past relevant work" is defined as "work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to do it." 20 C.F.R. § 1560(b)(1). A claimant will be found capable of performing past relevant work if he can meet the demands of the work either as he actually performed it or as it is generally performed in the national economy. 20 C.F.R. § 1560(b)(2). The ALJ found that Delaney was not disabled because he had held past relevant work as a cleaner, industrial as actually performed and bakery machine operator as defined in the Dictionary of Occupational Titles. These findings were based, at least in part, on a work history report completed on Delaney's behalf by his sister. (Tr. 177.)

The work history report listed three past relevant jobs in the report that Delaney performed in the previous 15 years: Killemeyer Billing Service, Valley Packing, and Honeycrust Bakery. (Tr. 177.) According to the report, the job at Honeycrust Bakery was from March 1972 to June 1998. (*Id.*) And the exertional requirements shown in the report for each of these positions placed them in the light work category. (Tr. 178-80.) In response to a hypothetical question posed by the ALJ, the vocational expert (VE) testified that Delaney, consistent with his physical RFC, would be able to perform this past relevant work. (Tr. 14, 62.) On the basis of this evidence, the ALJ concluded that Delaney was not disabled within the meaning of the Act.

Delaney argues that the ALJ's past relevant work finding is not supported by substantial evidence. He contends that the ALJ erred in finding that he had worked at his job at a bakery within the past fifteen years based on the work history report prepared by his sister instead of the substantial evidence to the contrary. He notes that the ALJ's finding is inconsistent with his testimony at the hearing and his own earnings report maintained by the Agency. (Tr. 150-55.)

But the ALJ did not rely on the work history alone; Delaney testified that he worked at the bakery as late as 1998. Unfortunately, as already noted, Delaney was not a very reliable witness,

and on this issue, he seemed to provide whatever answers his questioners wanted to elicit. His attorney first raised the issue of when he last worked in a bakery, asking the following leading question:

> Q. Now, you told the judge about your bakery job, but you and I have since figured out by looking at your earnings record that the bakery job was over 15 years ago, right?

(Tr. 38.) Delaney answered: "Correct." (*Id.*) The ALJ returned to the issue later in the hearing, likewise leading the witness with the question:

> Q. When did you last do that job? These records, these forms you filled out in the file here show 1998. Is that accurate?

(Tr. 58.) Delaney answered: "It's true. Yes." (Tr. 59.) At that point, Delaney's attorney attempted to return to the issue, stating "On the bakery job. I'm 99 percent certain Mr. Delaney is mistaken as to the timing of it." (Tr. 60.) Still later, Delaney's attorney again returned to the subject, this time with a series of leading questions:

> Q: Mr. Delaney, you testified in response to the judge's question that the Bakery Operator position was performed as recently as 1998. Now, the judge is getting that information from the information you got from - what your sister put into 3E. Okay? She said you last worked as a bakery [sic] at Honeycrust Bakery in June 1998. You moved to Wisconsin in the late '90's, right?
>
> A: Right.
>
> Q: The last job that you had before you moved to Wisconsin was construction worker?
>
> A: Construction.
>
> Q: How many years did you work construction?
>
> A: About six.
>
> Q: Okay. So - you worked at the bakery before you did the construction work?
>
> A: Correct.

> Q: [T]he last time you would have worked in the bakery would have been in the early 1990s. Is that right?
>
> A: Right.
>
> Q: [A]nd . . . you were always paid by paycheck when you worked for the bakery.
>
> A: Correct.
>
> Q: It wasn't cash?
>
> A: No.
>
> Q: Like the construction job was?
>
> A: No.
>
> Q: So when you look at your earnings record, which earlier today you and I looked at on the computer, it's showing that the last bakery job you had and you were paid for probably was around 1990.
>
> A: Correct.

(Tr. 65-66.) In fact, the last bakery job that shows up on Delaney's earnings report is Interstate Brands, Butternut Bread, where it appears he worked from 1981 to 1985. (Tr. 151-52.) The earnings report shows that Delaney received earnings from Coastal Maintenance, Inc. in 1990, as he had since 1987. (Tr. 152.) Then there is a gap in reported earnings between 1991 and 1996. The next earnings that were reported were from Edsal Manufacturing beginning sometime in 1997 and into 1998. Finally, Delaney received earnings from Kellermeyer Building Services from 1999 to 2008, and from Valley Packaging from 2000 to 2007, which were the two other employers listed in the work history report completed by Delaney's sister. (Tr. 153, 177.) There are no earnings reported from an employer named Honeycrust Bakery, which was the bakery position listed in Delaney's work history report. Confronted with Delaney's work history report prepared by his sister and Delaney's contradictory testimony, the ALJ concluded:

> Exhibit 2E only lists the claimant's last two jobs, but notes that the claimant started working as a fork lift driver in November 1999, which would be consistent with the claimant working as a bakery operator until 1998. The claimant's earnings record does not show any income from a bakery job in the late 1980's or 1990's and accordingly cannot be used to determine when that position ended, as it appears that the claimant's earnings were not reported (Exhibit 3D). Given the somewhat contradictory and imprecise evidence at hand, the undersigned finds the information at Exhibit 3E [the work history report] the most credible given its proximity to the matter in question, and other than the later testimony elicited by the representative, there is no reason to doubt its accuracy.

(Tr. 14.)

In fact, there are reasons to doubt the complete accuracy of the work history report filed on Delaney's behalf by his sister. First, the work history report shows Delaney working at Honeycrust Bakery from 1972 to 1998, even though his earnings report shows no earnings from such an employer. In particular, as noted above, Delaney's earnings report shows him working for Edsal Manufacturing from sometime in 1997 and into 1998. Thus, it would seem highly unlikely that he worked at a bakery as late as 1998 as the ALJ found. Of course, even if he worked at a bakery in 1996, it would still fall within the fifteen-year period required for it to be considered past relevant work. The earnings report does not rule out the possibility that Delaney did work at his bakery job within fifteen years of the hearing as the report filed on his behalf stated and as he himself, at one point in the hearing, testified.

The plain fact is that the earnings report itself is not sufficient to resolve Delaney's conflicting testimony. It shows no earnings from 1991 through 1996. (Tr. 152-53.) Delaney testified he was working construction for cash during this period, but the ALJ concluded, based on the work history report, that he was more likely working at a bakery for cash. Counsel points out that Delaney testified that he always was paid with a check during the time he worked at a bakery, but again, the ALJ reasonably concluded that Delaney's testimony was not credible. The ALJ then

concluded that the work history report was more reliable since it was "more credible given its proximity to the matter in question." (Tr. 14.)

It is not this court's role to re-weigh the evidence or substitute its judgment for that of the ALJ. *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004). An ALJ must articulate, at least minimally, his analysis of the evidence so that this court can follow his reasoning. *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000). This court is required to uphold the ALJ's decision so long as it is supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir.2003). "Evidence is 'substantial' if it is sufficient for a reasonable person to accept as adequate to support the decision." *Johansen v. Barnhart*, 314 F.3d 283, 287 (7th Cir. 2002) (internal quotations omitted).

Here, the ALJ concluded that the information Delaney provided to his sister when she filled out the work history report for him early in the process was, on the whole, more reliable than the contradictory testimony Delaney gave at the hearing to the leading questions put to him by the ALJ and his attorney. The ALJ's conclusion is not unreasonable. Most of Delaney's employment history up to that time had been in the bakery industry. The report for the most part accurately listed the other two most recent jobs Delaney held, and was not far off on the dates as shown by the earnings report. The information was apparently provided the Agency at a time when neither Delaney nor his sister would have had any reason to misrepresent his work history. Given Delaney's inconsistent testimony at the hearing and the substantial gaps in his earnings report, it was not unreasonable for the ALJ to credit Delaney's work history report, which Delaney in fact confirmed when initially asked by the ALJ whether it was accurate.

Delaney also contends, however, that the ALJ erred in accepting the VE's characterization of the bakery job as light work. Delaney testified that he was required to lift between 75 and 100

pounds at his bakery job. The VE testified that Delaney's bakery job was classified as light, but as described by Delaney at the hearing was performed as heavy. (Tr. 59.) Delaney asserts that the bakery job should have been classified as resembling a Baker Helper under the Dictionary of Occupational Titles Code 526.686-010, which is generally performed as a heavy job. He notes that not only does his testimony support such a finding, but his attorney sent a letter to the Agency prior to the hearing pointing out the errors in the work history report. (Tr. 105-07.)

But as noted above, the ALJ credited the work history prepared by Delaney's sister over his hearing testimony, and the work history report described the work Delaney did at the bakery as light: "Ran Machine. .... "Did not lift or carried [sic] anything." (Tr. 180.) The letter for Delaney's attorney does not change the analysis; it simply expresses his attorney's view of what the evidence will show. The ALJ has no obligation to accord it greater weight than he accords Delaney's own testimony. Given the evidence in the record, the ALJ's acceptance of the VE's classification of the job Delaney performed as Oven Operator, Automatic, was reasonable.

Delaney also argues that the ALJ's finding that the work history report was more reliable than his hearing testimony only applied to the timing of the bakery job, not the description of what the work entailed: "the ALJ only articulates his acceptance of the work history report with regard to the time period in which Delaney worked at the bakery." (Reply 3, ECF No. 16.) This is the type of hyper-technical argument that the Seventh Circuit has rejected on judicial review of social security disability claims. *See Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010) ("Rather than nitpick the ALJ's opinion for inconsistencies or contradictions, we give it a commonsensical reading.") Having explained his reasons for crediting the report over Delaney's testimony, the ALJ was not required to repeat the same analysis to explain why he resolved every inconsistency between the two as he did.

Finally, Delaney argues that the ALJ's finding that he could also perform his previous job as a cleaner, industrial, is unsupported by substantial evidence. The VE testified that this job would normally be considered medium work, but as described in the work history report, it was actually performed as light. The ALJ relied upon this testimony to support his finding that Delaney was not disabled because he also retained the RFC to perform this work. Based on this finding, the ALJ's ultimate decision would stand even if his findings as to the bakery job did not.

Delaney argues that the ALJ's finding that his cleaning job met the light classification as actually performed is not supported by substantial evidence. He points out that based on his testimony, the VE should have found that the cleaning job was in the medium work category. In fact, Delaney testified that while performing this job, he would be required to lift a machine weighing as much as 300 pounds, which would have made it heavy or very heavy though he also admitted he didn't really know how much the machine weighed. (Tr. 37.) The VE explained, however, that his opinion that the cleaning job as actually performed by Delaney was light was based on the work history report, which described it as light. (Tr. 62-63.) Further support in the record for this finding can be found in the report of Dr. Jankus who described his cleaning job as "an easy job" that "was not hard on his back, it was mostly some light vacuuming, sweeping, etc." (Tr. 272.) Though the job was part-time at the end, it was this job that Delaney held until he was laid off after the company lost a contract. (*Id.*) Together with the VE's testimony, it constitutes substantial evidence in the record that supports the ALJ's finding that Delaney could still perform his cleaning job even with his current RFC. The fact that the ALJ did not again explain why he credited the work history over Delaney's testimony does not require remand for the reasons already set forth.

# CONCLUSION

For the reasons stated above, the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** this   21st   day of March, 2013.

                                       s/ William C. Griesbach
                                       William C. Griesbach, Chief Judge
                                       United States District Court